## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08-144 (SLR) |
| GREEN PARK FINANCIAL, LP, | ) ) | |
| and | ) ) | |
| WOODLARK PROPERTIES III, LP, WOODLARK ENTERPRISES, III, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF ST. PAUL MERCURY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO WOODLARK PROPERTIES III, LP AND WOODLARK ENTERPRISES, III, INC.'S MOTION TO DISMISS**

Plaintiff St. Paul Mercury Insurance Company ("St. Paul"), by its undersigned attorneys, submits this opposition to Woodlark Properties III, LP and Woodlark Enterprises III, Inc.'s ("Woodlark") Motion to Dismiss for improper venue and failure to join necessary and indispensable parties.

## <u>INTRODUCTION</u>

Eight lawsuits (the "Underlying Actions") were instituted against Woodlark and Alex Vence, Jr. ("Vence") in the Circuit Court of Cabell County, West Virginia, relating to a fire at the Emmons Jr. and Emmons Sr. apartment buildings owned by Woodlark and managed by Woodlark's employee, Vence, in Huntington, West Virginia.  Woodlark and Vence filed a third-party complaint against Green Park Financial, LP ("Green Park") seeking indemnity and/or contribution for any liability they may have in the Underlying Actions.  The basis for their

alleged claim against Green Park is that in connection with the origination of a mortgage for Woodlark, Green Park recommended a building inspector to Woodlark. Woodlark alleges that the building inspector, who it has also sued in a third-party claim, did not accurately advise it of the condition of the buildings.

Green Park is a named insured on St. Paul primary and umbrella commercial general liability policies (the "Policies) that were in effect at the time of the fire. Although the Policies contain a Financial Professional Services exclusion that specifically excludes coverage for liability arising out of "mortgage operations," St. Paul is defending Green Park against the third-party complaint pursuant to a reservation of rights. St. Paul also, however, filed this declaratory judgment action seeking a declaration that it has no defense or indemnity obligation to Green Park in view of the Financial Services Exclusion.

St. Paul named Green Park and Woodlark as defendants. Woodlark is incorporated in Delaware with its principal place of business in New York, and Green Park is a District of Columbia corporation that regularly conducts business in Delaware.

On April 30, 2008, Woodlark moved to dismiss, arguing that venue is improper and that Vence and all of the plaintiffs in the Underlying Action are necessary and indispensable parties. For the reasons set forth below, Woodlark's motion to dismiss should be denied.

### STANDARD OF REVIEW

In deciding a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3), the moving party has the burden of proving that venue is improper. *See Albright v. Gord,* Civ. A. No. 02-304, 2002 WL 1765340, *3 (D.Del. July 31, 2002) (citing *Myers v. American Dental Ass'n,* 695 F.2d 716, 724 (3d Cir.1982)). "[I]n ruling on defendant['s] motion the plaintiff's

choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

In reviewing a motion to dismiss under Fed.R.Civ. P.12(b)(7) for failure to join an indispensable party, the court must accept all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* 65 Fed. Appx. 803, 805 (3d Cir.2003). It is the movant's burden to prove that a non-party is indispensable to the adjudication of the action. *Fed. Home Loan Mortgage Corp. v. Commonwealth Land Title Ins. Co.,* No. 92-5255, 1993 WL 95494, at *5 (E.D.Pa. March 31, 1993).

Woodlark has the burden of proving that either venue is improper or that indispensable parties have not been joined. Woodlark has failed to meet either of those burdens, and its motion to dismiss should be denied.

## ARGUMENT

### I.    Venue is Proper in the U.S. District Court for Delaware

Venue is Proper Under 28 U.S.C. §1391(a)(1)

The Court's jurisdiction in this matter is based solely on diversity of citizenship. In a diversity action, 28 U.S.C. §1391(a)(1) provides that venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State . . " For purposes of the venue statute, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. . ." 28 U.S.C. §1391(c). Because Woodlark and Green Park are subject to personal jurisdiction in this Court, venue in this Court is proper.

Woodlark is a Delaware corporation, with a registered agent for service in the state, and is therefore subject to the jurisdiction of this Court. Green Park is a foreign corporation that regularly does business in Delaware, and is therefore subject to personal jurisdiction in Delaware under 10 Del.C. §3104, which provides that "a court may exercise personal jurisdiction over any nonresident . . . who in person or through an agent . . . (4) . . . regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."[1] Thus, both Woodlark and Green Park are subject to the personal jurisdiction of this Court, and venue lies here under 28 U.S.C. §1391(a)(1).

In its motion to dismiss, Woodlark incorrectly contends that all defendants do not reside in the same state, and therefore that 28 U.S.C. §1391(a)(1) is inapplicable. (Motion to Dismiss at 7). For reasons that are unclear, Woodlark assumes that the plaintiffs in the Underlying Actions and Vence are defendants in this case, although they are not. Woodlark then argues that venue is improper under §1391(a)(1) because all defendants do not reside in Delaware. Woodlark's conclusion – that venue is improper under §1391(a)(1) – is wrong because its actual premise – that Vence and the West Virginia plaintiffs are defendants – is wrong.

Woodlark's arguments regarding the application of 28 U.S.C. §1391(a)(2) are irrelevant, as venue is proper under §1391(a)(1), and Woodlark's §1392(a)(2) argument requires no further response.

---

[1] According to its website, Green Park conducts business in 43 states, including Delaware, and recently developed a housing community in Smyrna, Delaware.

II.    **The Underlying Plaintiffs and Vence Are Not Necessary or Indispensable**
       **Parties to the Coverage Action**

    A.    Analysis Under Fed.R.Civ. P. 19

Woodlark next argues that this case should be dismissed under Fed.R.Civ.P.19 because the West Virginia plaintiffs and Vence are necessary and indispensable parties. Woodlark's Rule 19 argument, like its venue argument, is based on an incorrect premise. Specifically, Woodlark asserts that Vence and the West Virginia plaintiffs are "necessary" parties, when the applicable law plainly demonstrates that they are not.

Rule 19 requires a two-step analysis to determine whether joinder of a particular party is required for the action to proceed. First, the court must determine whether the party is "necessary" under Rule 19(a). If so, and the party cannot be joined in the action because doing so would defeat subject matter jurisdiction, then the court must determine if the party is "indispensable" under Rule 19(b). *Johnson & Johnson v. Coopervision, Inc.,* 720 F. Supp. 1116, 1121 (D.Del. 1989). The court should only dismiss the action if it finds that the party is "indispensable." *Id*. Determining whether a party is necessary and indispensable requires a fact-specific, flexible analysis by the court. *Provident Tradesmens Bank v. Patterson*, 390 U.S. 102 at 118, 88 S.Ct. 733, 742 (1968).

Vence and the underlying plaintiffs are not necessary parties to this action because their interest in it is limited to a financial interest in its outcome. *Liberty Mutual Insurance Company v. Treesdale, Inc.* 419 F.3d 216(3d Cir. 2005). Therefore, they cannot be indispensable under Rule 19(b). *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir.1993). See also, *Spring-Ford Area School Dist. v. Genesis Ins. Co.,* 158 F.Supp. 2d 476, 483 (E.D.Pa. 2001) (finding that where a party is not necessary under Rule 19(a), it cannot, by

definition, be indispensable under Rule 19(b)). Because Vence and the West Virginia plaintiffs

are neither necessary nor indispensable, Woodlark's motion to dismiss should be denied.

> B.    Vence and the West Virginia Plaintiffs are Not Necessary Parties Under Rule 19(a)(1)

A party is necessary to an action when:

> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i)    as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1). See also *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 748 F. Supp.

1057, 1064 (D.Del. 1990), citing *Johnson & Johnson v. Coopervision, Inc.,* 720 F. Supp. 1116

(D.Del. 1989). Vence and the underlying plaintiffs do not fit within any of the categories

identified by the Rule, and are therefore not necessary parties to this case.

> a.    Complete Relief Can be Afforded Among the Existing Parties

This Court is capable of according complete relief to St. Paul, Woodlark and Green Park

without the joinder of Vence and the underlying plaintiffs. For purposes of Rule 19(a)(1)(A),

completeness is determined on the basis of those who are already parties. *Angst v. Royal*

*Maccabees Life Ins. Co.,* 77 F.3d 701, (3d Cir. 1996); 3A Moore's Federal Practice 19.07-1[1] at

93-98 (2d ed. 1989). The potential effect a court's decision may have on non-parties is

immaterial to the question of whether complete relief can be afforded to those who are parties.

*General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306 (3d Cir. 2007).

St. Paul seeks a declaration that it is not obligated to defend and/or indemnify Green Park in the Underlying Actions. To afford the parties complete relief, the Court is required to interpret the Policies and determine if the third-party claims against Green Park are potentially covered under them. The absence of Vence and the underlying plaintiffs will not prevent the Court from providing St. Paul with the relief it seeks: an interpretation of the terms and conditions of the Policies. *See Remington Arms Co. v. Liberty Mut. Ins. Co.,* 748 F. Supp. 1057, 1065 (D.Del. 1990) (finding that the absence of a parent company and its excess insurers in a declaratory judgment action did not prevent the court from providing an interpretation of the terms and conditions of policies issued to the subsidiary and its insurers).

In *Alcoa, Inc. v. Alcan Inc.*, 495 F.Supp.2d 459 (D.Del. 2007), this Court considered whether a city that ordered environmental remediation was a necessary party to an action between potentially responsible parties alleging indemnity obligations against each other. This Court held that the city was not a necessary party, finding that "the City's actions need not be evaluated by the court in order to fashion the declaratory relief plaintiff has requested." *Alcoa, Inc. v. Alcan Inc.*, 495 F.Supp.2d at 465. Similarly, although the West Virginia plaintiffs' claims may have led to this action, their participation is not necessary under Rule 19(a)(1)(A) to determine the contractual obligations between St. Paul and Green Park.

Because complete relief can be granted to St. Paul, Woodlark and Green Park, Vence and the West Virginia plaintiffs are not necessary parties under Rule 19(a)(1)(A).

        b.    <u>Impairment to Rights of Vence and The West Virginia Plaintiffs</u>

             i.    <u>A Mere Financial Interest in the Result is Not Enough</u>

Woodlark argues that Vence and the West Virginia plaintiffs are necessary parties under Rule 19(a)(1)(B)(i) because, according to Woodlark, they have a significant and material interest

in the action that would be impaired if the action were to proceed without them. (Motion to Dismiss at 3-4). Woodlark asserts that a decision finding no insurance coverage for Green Park would impair Vence's ability to satisfy a judgment rendered in the Underlying Actions, and would prejudice the West Virginia plaintiffs recovery in the Underlying Actions. (Motion to Dismiss at 4). Woodlark's argument is essentially that Vence and the West Virginia plaintiffs are necessary parties in this case because they have a financial interest in Green Park's ability to pay a judgment.

The Third Circuit specifically rejected this argument in *Liberty Mut. Ins. Co. v. Treesdale, Inc., supra. Treesdale* involved a declaratory judgment action between an insurer and its insured, a manufacturer who had been sued for its production of asbestos-containing side boards and rings. The injured plaintiffs in the underlying action attempted to intervene in the coverage action, alleging that they were necessary parties under Rule 19(a)(1)(B)(i).[2] The court held that the injured plaintiffs were not necessary parties because their interest did not relate to the subject matter of the action. The court held that "under [Rule 19(a)(1)(B)(i)], a party is only "necessary" if it has a legally protected interest, and not merely a financial interest, in the action." *Treesdale,* 419 F.3d at 230, citing *Spring-Ford Area School District v. Genesis Ins. Co.*, 158 F.Supp.2d at 483. The Third Circuit found that the underlying plaintiffs had no legally protected interest, as they were merely concerned with being able to collect on a judgment they might obtain against the insured.

Likewise, Vence and the West Virginia plaintiffs do not have a legally protected interest in this case. They are not parties to the Policies and are not otherwise named as insureds under the Policies. Woodlark's motion alleges no more than a financial interest by Vence and the West

---

[2] The opinion references Fed.R.Civ.P. 19(a)(2)(I), which is numbered 19(a)(1)(B)(i) under the current Rule.

Virginia plaintiffs in the outcome of this case. The Third Circuit has clearly held that such an interest is insufficient to make a party "necessary" under Rule 19(a)(1)(B)(i).

ii.    <u>Woodlark Will Protect the Proposed Parties' Interests</u>

The interests of Vence and the West Virginia plaintiffs in this case are identical to the interest of Woodlark: each has an interest in Green Park securing insurance coverage to respond to a judgment against it. Even in their absence as parties the interests of Vence and the West Virginia plaintiffs are protected by Woodlark.

Woodlark's claim that Vence's interests would not be protected in this case is contradicted by Vence and Woodlark's combined efforts in the Underlying Actions. Vence is Woodlark's employee. He is sued in the Underlying Actions only in that role. He and Woodlark are represented by the same lawyer in the Underlying Actions. They are aligned in their defense of the Underlying Actions and in their third-party complaint against Green Park. If Vence were joined to this case, he presumably would be represented by the same counsel as Woodlark just as he is in the West Virginia action. Joining Vence would make no practical difference to the course or outcome of this case.

It is worth noting that the West Virginia plaintiffs have not sued Green Park in the Underlying Actions. Their interest is in whether Woodlark, not Green Park, has insurance coverage.

In *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 748 F. Supp. 1057 (D.Del. 1990), the Delaware District Court found that a parent corporation was not a necessary party to a declaratory judgment action brought by its subsidiary company against its insurers. The court stated that the parent corporation's interest was identical to the subsidiary's: both wished the subsidiary to have insurance to cover the underlying environmental claims against it. *Remington*

*Arms Co. v. Liberty Mut. Ins. Co.,* 748 F. Supp. at 1064.  Likewise, Woodlark has not identified any interest of Vence or the West Virginia plaintiffs that is distinguishable from its own, and that would not, as practical matter, be protected by Woodlark's participation in this case.

Other jurisdictions have similarly held that when identical interests exist between two parties, and one of the parties will sufficiently represent those interests, the other party is not necessary to the litigation. See, e.g., *Southeastern Sheet Metal Joint Apprenticeship Training Fund v. Barsuli,* 950 F.Supp. 1406, 1414 (E.D.Wis.1997) (impairment may be minimized if the absent party is adequately represented by another party in the suit with virtually identical interests who would be advancing virtually the same legal and factual positions.") (citation omitted); *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.,* 140 B.R. 56, 61-62 (S.D.N.Y.1992) (absent corporate defendant not necessary because it was "adequately represented" by named defendants who were the absent party's controlling shareholders); *National Union Fire Ins. Co. v. Mason, Perrin & Kanovsky,* 709 F.Supp. 411, 414 (S.D.N.Y.1989) (if present defendants will raise all arguments that absent parties would raise, absent parties' interests are adequately represented.).

   c. <u>Substantial Risk of Multiple or Inconsistent Obligations</u>

Woodlark finally argues that, under Rule 19(a)(1)(B)(ii),  St. Paul's failure to join Vence and the West Virginia plaintiffs poses a substantial risk that Woodlark will incur multiple or inconsistent judgments.  Specifically, Woodlark reasons that a finding of no coverage by this Court would be inconsistent with a finding that Woodlark is liable in the Underlying Action. (Motion to Dismiss at 4-5).  Woodlark's reasoning simply doesn't follow.

This Court's decision concerning insurance coverage will be separate and distinct from any liability decision made in the Underlying Actions: one relates to liability and the other to

insurance coverage.   As noted by the Delaware District Court, Rule 19 "protects against situations in which there are two court orders and compliance with one might breach the other." *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 748 F. Supp. at 1067.  Since any order this Court enters will address insurance coverage, not liability, compliance with this Court's order could not breach any order entered in the Underlying Action concerning liability.  This action poses no threat to Woodlark of inconsistent judgments.


**CONCLUSION**

For the reasons set forth, Woodlark's motion to dismiss should be denied.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ Neal J. Levitsky, Esquire
Neal J. Levitsky, Esquire (No. 2092)
Seth A. Niederman, Esquire (No. 4588)
919 N. Market Street, Suite 1300
Wilmington, DE  19801
(302) 622-4200
*Attorneys for Plaintiff*
*St. Paul Mercury Insurance Company*

**OF COUNSEL:**
Lee H. Ogburn, Esquire
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD  21202-3201
(410) 752-6030

Dated:  May 12, 2008

Westlaw.

Not Reported in F.Supp.2d                                                                                   Page 1
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1765340)**

Ⓒ Albright v. W.L. Gord & Associates, Inc.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Robert ALBRIGHT, et al., Plaintiffs,
v.
W.L. GORE & ASSOCIATES, INC., Defendant.
**No. 02-304-GMS.**

July 31, 2002.

Former employees brought discrimination claims against former employer under the Age Discrimination in Employment Act, (ADEA), Americans with Disabilities Act, (ADA), and Title VII of the Civil Rights Act. Former employer moved to dismiss for improper venue. The District Court, Sleet, J., held that: (1) employer did not waive its defense of improper venue by participating in pre-trial mediation; (2) venue was improper in the District of Delaware; and (3) case would be transferred to District of Maryland.

Motion granted.

West Headnotes

**[1] Federal Courts 170B** ⚷95

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk95 k. Objections, Waiver and Consent. Most Cited Cases
Employer did not waive its defense of improper venue by participating in pre-trial mediation with former employees asserting various discrimination claims, where mediation took place nearly seven months prior to filing of complaint, and federal rules of civil procedure clearly implied that employer's obligation to raise venue defense did not arise until filing of complaint, and terms of parties' tolling agreement specifically stated that parties preserved all applicable defenses. Fed.Rules Civ.Proc., Rule 12(h), 28 U.S.C.A.

**[2] Federal Courts 170B** ⚷74

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk74 k. Particular Actions. Most Cited Cases
Venue was improper in the District of Delaware with regard to former employees' claims against former employer under the ADEA, the ADA, and Title VII, even though some documents related to plaintiffs' employment were in Delaware, where the alleged discrimination took place in Maryland rather than Delaware, and plaintiffs would not have worked in Delaware in the absence of the alleged discrimination. Civil Rights Act of 1964, § 706(f)(3), 42 U.S.C.A. § 2000e-5(f)(3); Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; Age Discrimination in Employment Act of 1967, § 2 et seq, 29 U.S.C.A. § 621 et seq. .

**[3] Federal Courts 170B** ⚷74

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk74 k. Particular Actions. Most Cited Cases
When ADEA claims are presented simultaneously with an ADA or Title VII claim, the lawsuit must be filed in the judicial district where venue is proper for both claims. Age Discrimination in Employment Act of 1967, § 2 et seq, 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 706(f)(3), 42 U.S.C.A. § 2000e-5(f)(3); Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[4] Federal Courts 170B** ⚷133

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)3 To What District Action May Be Transferred
                170Bk133 k. Particular Determinations. Most Cited Cases
After federal district court in Delaware determined

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1765340)**

that venue was improper in that district, court would transfer plaintiffs' discrimination case to the District of Maryland, rather than dismiss the case, where the alleged discrimination occurred in Maryland, and if the purported discriminatory acts had not occurred, the plaintiffs would have continued their employment in Maryland, and the relevant records regarding the hiring, termination, and promotion practices were located in Maryland. 28 U.S.C.A. § 1406(a).

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

**\*1** On April 25, 2002, the plaintiffs filed a complaint against the defendant, W.L. Gore & Associates ("Gore") in the United States District Court for the District of Delaware. The complaint lists a total of eighteen plaintiffs, all of whom are former Gore employees. Each of the plaintiffs alleges that Gore engaged in a pattern and practice of discriminating against older employees in violation of the Age Discrimination in Employment Act of 1967, ("ADEA"), 29 U.S .C. § 621, *et seq.* Ten of the plaintiffs also allege that the defendant discriminated against them based on their disabilities in violation of the Americans with Disabilities Act of 1991, ("ADA"), 42 U.S.C. § 12101, *et seq.* Finally, one plaintiff also alleges that the defendant unlawfully discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, *et seq.*

Presently before the court is the defendant's motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The defendant contends that according to the relevant venue statutes, venue is improper in Delaware because the plaintiffs worked at Gore's Maryland facility, the allegedly discriminatory acts took place in Maryland, and in the absence of any discrimination, the plaintiffs would have remained employed in Maryland, not Delaware. The plaintiffs counter by arguing that the defendant has waived any objection to venue in Delaware by participating in a mediation held in the District of Delaware. The plaintiffs also contend that waiver notwithstanding, venue is proper in Delaware because documents relevant to the plaintiffs' claims are located in Delaware. The defendant responds by

stating that the defense of improper venue is waived only if not raised in a motion or responsive pleading. Gore therefore argues that it did not waive any objections to venue during the mediation because no complaint had been filed at that time, and therefore the obligation to file a motion or responsive pleading had not yet been triggered. Gore further asserts that the terms of the mediation dictated that neither party would waive any defenses by participating in the mediation. Finally, Gore argues that the Delaware documents are completely irrelevant to the plaintiffs' discrimination claims.

Upon review of the facts, the law, and the submissions of the parties, the court concludes that given the plain language of both Rule 12(b)(3) and the tolling agreement, the defendant did not waive its objections to venue. Additionally, the court concludes that under the venue provisions governing Title VII and ADA cases, venue is not proper in the District of Delaware. However, to prevent any prejudice or injustice to the plaintiffs, rather than dismissing this case outright, the court will transfer the case to the District of Maryland because the case could have (and should have) been brought there. The court will now explain the reasoning behind its decision.

II. FACTS

**\*2** The defendant Gore is a Delaware corporation. Although Gore's corporate headquarters are located in Newark, Delaware, it also has offices and facilities in Maryland. Each of the eighteen plaintiffs were employed by Gore. Each plaintiff worked at Gore's facility in Elkton, Maryland.

The plaintiffs were terminated at various times between 1998 and 2000. The plaintiffs allege they were terminated in violation of their rights under federal law. All eighteen of the plaintiffs allege that Gore engaged in a pattern and practice of age discrimination in violation of the ADEA because Gore had a tendency to fire older employees in favor of retaining more youthful employees. Additionally, ten plaintiffs allege that Gore discriminated against them by terminating them due to their various disabilities in violation of the ADA. Finally, one plaintiff, Gary Johnson, has alleged that he was unlawfully terminated by the defendant based on his race in violation of Title VII. The plaintiffs properly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1765340)**

exhausted their administrative remedies at both the state and federal levels before filing the present suit. The plaintiffs filed claims with the Maryland Commission on Human Relations in 1999. The plaintiffs then filed claims with the Equal Employment Opportunity Commission ("EEOC") office in Baltimore, Maryland.

In December 2000, while the administrative claims were under consideration, Gore proposed that the parties participate in a mediation. The plaintiffs had been contemplating filing suit in the District of Delaware. Counsel for the plaintiffs wrote a letter to Magistrate Judge Mary Pat Thynge of the District of Delaware on March 2001. That letter expressed the plaintiffs' intent to file in the District of Delaware, but no complaint had yet been filed. Judge Thynge accepted the case for mediation. In anticipation of mediation, and in recognition of the statute of limitations on the plaintiffs' claims would expire if mediation was unsuccessful, the parties had previously entered into a tolling agreement in December 2000. The tolling agreement stated, "This Agreement shall not be considered a waiver of any claims or defenses by Gore or the Gore employees ..." (D.I.1, Ex. E.)

The mediation was held in September 2001 in Delaware. The plaintiffs and the defendant participated fully in the mediation. However, the mediation was unsuccessful. The plaintiffs filed their complaint in April 2002.

In support of their contention that venue is appropriate in Delaware, the plaintiffs contend that important employment related documents, "including plaintiffs' payroll records and other personal information" are located at Gore's corporate headquarters in Newark, Delaware. More specifically, the plaintiffs assert that the following records are located in Delaware: (1) a letter concerning the accuracy of Gore's employee database; (2) documents regarding Gore's employee stock ownership plan; (3) a memo discussing Gary Jackson's pay and benefits at the time of separation; (4) Gary Jackson's separation paperwork; and (5) the plaintiffs' pay statements and W-2 forms. The defendant does not dispute that these documents are located in Delaware. Rather, Gore contends that all of the documents are irrelevant to the plaintiffs' discrimination claims. Further, the defendants note

that all of the relevant documents and potential witnesses (i.e.supervisors, employees, etc.) are employed or located at Gore's Elkton, Maryland facility.

III. STANDARD OF REVIEW

**\*3** Federal Rule of Civil Procedure 12(b)(3) allows a defendant make a motion to dismiss for improper venue. FED. R. CIV. P. 12(b)(3). Upon such a motion, the district court must determine whether venue is proper according the appropriate statutes. *See* Reed v. Weeks Marine, Inc., 166 F.Supp.2d 1052, 1054 (E.D.Pa.,2001).*See also* Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 538 (6th Cir.2002). The movant has the burden of proving that venue is improper in the selected forum. *See* Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir.1982).

IV. DISCUSSION

The court will first discuss the waiver issue. The court will next consider whether venue is proper in the District of Delaware. Finally, the court will discuss why it is appropriate to transfer the case to the District of Maryland.

A. Waiver of the Improper Venue Defense

[1] The plaintiffs assert that the defendant has waived any improper venue defense by participating in the September 2001 mediation. The court disagrees for two reasons.

First, under a strict construction of the Federal Rules of Civil Procedure, Gore could not have waived its improper venue defense prior to the filing of the complaint. Federal Rule of Civil Procedure 12(h) governs waiver of defenses contained in Rule 12. Rule 12(h) states that the defense of improper venue is waived "if it is neither made by motion under this rule nor included in a responsive pleading ...".*See*FED. R. CIV. P. 12(h)(1).

The plain language of Rule 12(h) thus makes clear that the improper venue defense is waived only when the defense is not asserted in a Rule 12 motion to dismiss or a responsive pleading. It goes without saying, however, that the obligation to file a Rule 12

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1765340)**

motion or a responsive pleading arises only *after* the complaint has been filed. *See*Fed.R.Civ.P. 12(a) (noting that answer or responsive pleading must be filed "within 20 days *after* " the complaint has been served).

In the present case, the September 2001 mediation took place nearly seven months prior to the filing of the plaintiffs' complaint in April 2002. Since the plain language of Rule 12(h) clearly implies that the defendant's obligation to raise the venue defense did not arise until the filing of the complaint, the court finds that the defendant did not waive the venue defense.

Statutory construction aside, as a matter of policy, it makes little sense to require defendants to assert the venue defense before a complaint has actually been filed. Granted, in the present case, Gore was notified of the plaintiffs' intention to file in Delaware. Nevertheless, in the seven months that passed between the mediation and the filing of the complaint, the plaintiffs could have changed their minds and decided to file elsewhere. Thus, adopting a rule that required defendants to raise venue objections prior to the actual filing of the complaint would require defendants to anticipate changes in their adversaries' litigation strategies. The court finds that such a rule is unnecessary and untenable. *See, e.g., Neifeld v. Steinberg,* 438 F.2d 423, 425 n. 1 (3d Cir.1971) (noticing of deposition in improper forum did not consistute waiver).

**\*4** The terms of the tolling agreement also compel the court to disagree with the plaintiffs' waiver arguments. The plaintiffs cite *Chrysler Capital Corp. v. Woehling,* 663 F.Supp. 478, 481 (D.Del.1987), for the proposition that the defendant can waive venue prior to the filing of a complaint by voluntarily submitting to the jurisdiction of another court. Significantly, in *Chrysler,* the defendant signed a promissory note containing a forum selection clause.*Id.* at 481.However, just the opposite occurred in the present case. The terms of the tolling agreement specifically state that neither the plaintiff nor the defendant would waive any applicable defenses. The court therefore finds that the terms of the tolling agreement preserved any and all defenses, including improper venue, that Gore might later wish to assert. To hold otherwise would vitiate the terms of the tolling agreement and belatedly deprive the

defendant of a defense that it had every right to believe was properly preserved.

For all of the above reasons, the court finds that the defendants did not waive the defense of improper venue.

B. Venue is Improper in the District of Delaware.

[2] Although Rule 12(b)(3) permits a party to make a motion to dismiss where venue is improper, "the Rules of Civil Procedure do not contain any venue provisions or requirements."*Kerobo,* 285 F.3d at 538. Rather, "[t]he requirements for venue are set forth by statute."*See id.*The court must therefore examine the appropriate venue statutes to determine whether venue is appropriate in this district.

[3] The plaintiffs assert causes of action under Title VII, the ADEA, and the ADA. Venue for Title VII and ADA claims is governed by 42 U.S.C. § 2002e-5(f)(3). Venue for ADEA claims is governed by the general venue statute, 28 U.S.C. § 1391. Although venue for the ADEA claims is covered by a different statute, courts have consistently held that when ADEA claims are presented simultaneously with an ADA or Title VII claim, the lawsuit must be filed in the judicial district where venue is proper for both claims. *See Kravitz v. Institute for Intn'l Research, Inc.,* 1993 WL 453457, at \*3 (E.D.Pa. Nov.5, 1993). Therefore, the court will focus its discussion on whether venue is appropriate for the Title VII and ADA claims pursuant to 42 U.S.C. § 2000e-5(f)(3).Section 2000e-5(f)(3) states that a Title VII case may be brought in:

any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C.2000e-5(f)(3).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1765340)**

*5 The plaintiffs do not dispute that the alleged discrimination took place in Maryland. Neither do the plaintiffs allege that in the absence of the alleged discrimination, they would have continued to work in Delaware. However, the plaintiffs contend that they can nevertheless establish venue in Delaware under 42 U.S.C. § 2000e-5(f)(3) because "employment records relevant to [the discriminatory] practice are maintained and administered" in Delaware. In support of their position, they note that documents relating to the plaintiffs' employment at Gore are located at Gore's corporate headquarters in Delaware. Specifically, the plaintiffs assert that the following records are located in Delaware: (1) a letter concerning the accuracy of Gore's employee database; (2) documents regarding Gore's employee stock ownership plan; (3) a memo discussing Gary Jackson's pay and benefits at the time of separation; (4) Gary Jackson's separation paperwork; (5) the plaintiffs' pay statements and W-2 forms.

Although Gore does not dispute that these documents are located in Delaware, it argues that none of the above mentioned documents are relevant to the plaintiffs' claims. The court is constrained to agree with this position. In order to prevail on their claims under Title VII, the ADA, and the ADEA, the plaintiffs must demonstrate that they were discriminated against based on their race, age, or disability. The accuracy of Gore's employee database has little, if any, relevance to whether the plaintiffs were discriminated against. Similarly, the existence of an employee stock ownership plan is not probative of any discrimination by Gore. The plaintiffs' W-2 forms and pay statements might be relevant if the plaintiffs asserted that they were paid less based on their age, race, or disability. However, the gravamen of the plaintiffs' claims is that they were terminated in violation of the applicable law. Therefore, the payroll documents are completely irrelevant as they do not demonstrate that the plaintiffs were wrongfully terminated for any reason.

Finally, the documents concerning the plaintiff Jackson's benefits at the time of separation and his other separation paperwork are relevant to demonstrate that he was terminated. Nevertheless, the documents do little to demonstrate *why* Jackson was terminated. They do not prove that Jackson was terminated based on his race, age, or disability. Thus, the separation documents do not appear to be relevant

to the plaintiffs' claims of discrimination.

The court concludes that no discrimination took place in Delaware and that the plaintiffs would not have worked in Delaware in the absence of the alleged discrimination. The court also finds that although certain documents tangentially related to the plaintiffs' employment are located in Delaware, these documents are not relevant to the plaintiffs' discrimination claims. For all of these reasons, the court finds that venue is improper in the District of Delaware pursuant to 42 U.S.C. § 2000e-5(f)(3).

C. Venue is Proper in the District of Maryland, and Transfer to that District is in the Interests of Justice.

*6[4] Having decided that venue is improper in this district, the court must determine whether the plaintiffs' case will be dismissed or transferred. Where venue has been incorrectly chosen, a district court may dismiss the case, or it may transfer it to the appropriate district "in the interest of justice." 28 U.S.C. § 1406(a).

The court finds that although dismissal would be appropriate, transfer of this case is in the interest of justice. If this case is dismissed, the plaintiffs may face a substantial statute of limitations problem, as evidenced by the tolling agreement. The statute of limitations has run, and the plaintiffs will be unnecessarily prejudiced in pursuing their claim. Therefore, the court will transfer, rather than dismiss, the case.

Section 1406 states that if a transfer is made, it should be made "to any district or division in which [the case] could have been brought."*Id.* Turning again to the Title VII venue statute, the court finds that the District of Maryland meets all of the requirements set forth in the statute. The alleged discrimination occurred in Maryland. If the purported discriminatory acts had not occurred, the plaintiffs would have continued their employment in Maryland. Finally, the relevant records regarding the hiring, termination, and promotion practices at the Elkton facility are located in Elkton, Maryland. Consequently, it is clear that this case could have, and should have, been brought in the District of Maryland. Therefore, the court will order that this case be transferred to that district.[FN1]

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1765340)

FN1. The court will not accede to the plaintiffs' request to "transfer" the case back to the District of Delaware because Gore has its principal office in Delaware. Although 42 U.S.C.2000e-5(f)(3) does state that venue is proper in the district where the defendant has its principal office, both the statute and case law imply that this provision is only triggered if venue cannot be found in any other district. *See* 42 U.S.C.2000e-5(f)(3) ("[B]ut if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."); *Arrocha v. Panama Conal Comm'n,* 609 F.Supp. 231, 234 (E.D.N.Y.1985) ("The court may look to the district in which the employer's principal office is located *only* if venue cannot be laid in one of the other three possible districts specified in the statute.")(emphasis in original). Since it is clear that this case could have been brought in Maryland, the court need not apply the "principal office provision." To rule otherwise would clearly disregard the intent of Congress' statutory scheme. *See id.*("[T]he venue provision has been held to demonstrate Congress' clear intent 'to limit venue to the judicial districts concerned with the alleged discrimination' ").

V. CONCLUSION

For the foregoing reasons, the court concludes that the defendant did not waive the issue of improper waiver. Moreover, the court finds that venue is improper in the District of Delaware. However, the court finds that dismissal of the case is unwarranted and that transfer is in the interest of justice. Since the court finds that the case could have been brought in the District of Maryland, the court will order that this case be transferred to that district.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The defendant's Amended Motion to Dismiss for Improper Venue (D.I.14) is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the District of Maryland.

3. The defendant's Original Motion to Dismiss for Improper Venue (D.I.6) is DISMISSED as MOOT.

4. The defendant's Motion to Dismiss the Plaintiffs' Pattern or Practice Claims (D.I.9) is DISMISSED as MOOT.

D.Del.,2002.
Albright v. W.L. Gord & Associates, Inc.
Not Reported in F.Supp.2d, 2002 WL 1765340 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



CFederal Home Loan Mortgage Corp. v.
Commonwealth Land Title Insurance Company
E.D.Pa.,1993.

United States District Court, E.D. Pennsylvania.
FEDERAL HOME LOAN MORTGAGE CORP. and
MortgageLinq Corp.
v.
COMMONWEALTH LAND TITLE INSURANCE
COMPANY, Edward Cavallaro, Continental Title
Insurance Company, Elizabeth Kehoe, Lawyers Title
Insurance Corp., Markland Title Services, Inc., and
Roberta Rankin
**No. CIV. A. 92-CV-5255.**

March 31, 1993.

MEMORANDUM AND ORDER

SHAPIRO.
**\*1** Before the court are three motions to dismiss and two for summary judgment: Defendants Commonwealth Land Title Insurance Company ("Commonwealth"), Markland Title Services, Inc. ("Markland"), and Edward Cavallaro ("Cavallaro") have moved to dismiss; defendants Continental Title Insurance Company ("Continental") and Elizabeth Kehoe ("Kehoe") have jointly moved for summary judgment, and defendant Lawyers Title Insurance Corporation ("Lawyers Title") has moved for summary judgment or in the alternative for dismissal of Count I of the Complaint. Oral argument was heard on December 22, 1992.

For the reasons discussed below, all of these motions will be denied. However, the motions claiming insufficient RICO allegations will be denied without prejudice to motions for summary judgment at the conclusion of discovery. The motions based upon the related civil action in New Jersey Superior Court will be denied without prejudice to motions for summary judgment when that action is concluded.

I. BACKGROUND

In March, 1991, MortgageLinq Corporation

("MortgageLinq"), a Pennsylvania Corporation in the business of making mortgage loans, filed a civil action against defendants it alleged were involved in a scheme of fraudulent mortgage financing involving 24 separate real estate transactions. *MortgageLinq Corp., et al. v. Richard Gottfried, et al.,* U.S.D.C. E.D. Pa. No. 91-CV-1618 (hereinafter "*MortgageLinq I* "). The Federal Home Loan Mortgage Corporation ("Freddie Mac") was granted leave to intervene as a plaintiff, because MortgageLinq had sold each of the mortgages involved to Freddie Mac.[FN1] The plaintiffs and subject real estate transactions in the present action are the same as those in *MortgageLinq I,* but none of the present defendants were named parties in *MortgageLinq I.*

The defendants in *MortgageLinq I* included the mortgage broker submitting the fraudulent mortgage loan applications to MortgageLinq, the mortgage broker's principal, the corporations and persons who participated as purchasers and sellers in the real estate transactions, and appraisers, lawyers, real estate agents, and insurance agents, who were involved in the fraudulent transactions. The present defendants are title companies and their employees, who are alleged to have supervised the closings in furtherance of the fraudulent scheme, and who provided title insurance to MortgageLinq on the individual properties involved. The former *MortgageLinq I* defendants will sometimes be referred to as the "broker defendants," and the present defendants will sometimes be referred to as the "title company defendants."

Of the 30 defendants in *MortgageLinq I,* 17 either settled with plaintiffs or were dismissed. Judgment was entered in *MortgageLinq I* in favor of MortgageLinq and Freddie Mac and against the 13 remaining broker defendants on July 21, 1993.

While *MortgageLinq I* was pending, plaintiffs filed an action in New Jersey Superior Court against the present defendants ("*N.J. MortgageLinq* "). In a series of orders and opinions, Judge Barry M. Weinberg dismissed Lawyers Title, Continental, and Kehoe as defendants in *N.J. MortgageLinq* under New Jersey's "entire controversy" doctrine. Four title

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

company defendants (Commonwealth, Cavallaro, Markland, and Rankin) remain defendants in the pending *N.J. MortgageLinq* action.[FN2]

**\*2** The Complaint charges defendants, corporate and individual, with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); misrepresentation; false swearing; conspiracy; negligence; and breach of fiduciary duty. The Complaint also charges the corporate defendants with: negligent supervision of closing; respondeat superior; breach of contract (not as to Lawyers Title); breach of title insurance policies; and bad faith (not as to Markland). The individual defendants are also charged with wrongful notary services.

The grounds for the motions under consideration are: (i) insufficient RICO allegations (Continental, Kehoe, Lawyers Title); (ii) lack of *in personam* jurisdiction and improper venue (Markland); (iii) failure to join an indispensable party (Cavallaro); (iv) claim preclusion based on *MortgageLinq I* (Commonwealth, Continental, Kehoe, Lawyers Title); and (v) claim preclusion based on *N.J. MortgageLinq* (Commonwealth, Continental, Kehoe, Lawyers Title).

## II. DISCUSSION

### A. RICO

Count I of the Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*: that defendants have conducted or participated in an enterprise, directly or indirectly, through a pattern of racketeering activity, or aided and abetted such activity, in violation of 18 U.S.C. § 1962(c), and that defendants conspired to conduct or participate in an enterprise, directly or indirectly, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). Complaint ¶¶ 187, 188. Defendants Continental and Kehoe have moved in the alternative for summary judgment on Count I; defendant Lawyers Title has moved in the alternative for dismissal of Count I.

Accepting all allegations in the Complaint as true, and drawing all inferences in favor of plaintiffs, the court cannot say that plaintiffs will be unable to establish entitlement to the relief claimed under RICO. *See H.J. Inc. v. Northwestern Bell,* 492 U.S. 229 (1989); *Swistock v. Jones,* 884 F.2d 755, 758 (3d Cir.1989); *Amalgamated Transit Union, Div. 819 v. Byrne,* 568 F.2d 1025, 1031 (3d Cir.1977) (en banc). The motions related to the RICO allegations have been decided on the pleadings, and the affidavits filed with the motions and plaintiffs' Response. At this stage of the litigation, prior to discovery, the court finds the RICO allegations sufficient to withstand a motion to dismiss or for summary judgment. These motions will be denied without prejudice to motions for summary judgment after discovery has been concluded.

The court cannot now rule that plaintiffs will be unable to show a "pattern of racketeering activity" or a conspiracy to engage in one. A pattern of racketeering activity requires that the predicate acts of racketeering activity be "related, *and* that they pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239. Defendants challenge plaintiffs' ability to meet the "continuity" prong of this test. "Continuity" may be shown in either of two ways. In the so-called "closed-ended" scheme, plaintiff must prove a series of related predicates lasting a " 'substantial period of time.' "

**\*3** *Hughes v. Consol-Pennsylvania Coal Co.,* 945 F.2d 594, 609 (3d Cir.1991), *cert. denied,* 112 S.Ct. 2300 (1992) (quoting *H.J. Inc.,* 492 U.S. at 242). For an "open-ended" scheme, plaintiff must prove a " 'threat of continuity,' " i.e., that "the predicate acts are part of defendant's 'regular way of doing business.' " *Hughes,* 945 F.2d at 609 610 (quoting *H.J. Inc.,* 492 U.S. at 242).

Defendants rely upon *Hughes, supra,* an appeal from denial of judgment n.o.v. following a jury trial. The Third Circuit Court of Appeals found a lack of continuity, under both the "open-ended" or "closed-ended" tests, stating: "continuity depends ultimately on the 'specific facts of each case.' " *Hughes,* 945 F.2d at 610 (quoting *H.J. Inc.,* 492 U.S. at 242). Since the facts here are yet to be established, it would be premature to dismiss the RICO claims in Count I under § 1962(c) and § 1962(d) because of the claimed lack of continuity.[FN3] The Complaint, viewed in its entirety, adequately pleads a conspiracy under RICO. *See Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162 (3d Cir.1989).[FN4]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

B. *IN PERSONAM* JURISDICTION AND VENUE

Defendant Markland has moved for dismissal for lack of *in personam* jurisdiction and improper venue. In addition to the Response of the plaintiffs in opposition, defendant Lawyers Title filed a Memorandum of Law in opposition to Markland's motion, and defendants Continental and Kehoe's motion to join Lawyers Title's opposition was granted by Order of March 11, 1993.

Markland submitted the Affidavit of its President, George Piccola, averring that: Markland is a corporation organized under the laws of the State of New Jersey, conducting business in that State; it is not authorized to transact business in Pennsylvania; has never maintained an office, mailing address, telephone listing, bank account, or other business facility in Pennsylvania; and has never owned property or paid taxes in Pennsylvania. The affidavit further avers that the three particular real estate transactions in which Markland and its agent, Roberta Rankin, were directly involved, occurred in New Jersey, and concerned New Jersey properties. The Motion argues that Markland lacks sufficient "minimum contacts" with Pennsylvania for this court to exercise *in personam* jurisdiction over Markland. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3d Cir.1985), cert. denied, 474 U.S. 980 (1985).[FN5]

This court has federal question subject matter jurisdiction over the RICO claims. *See* 28 U.S.C. § 1331. Personal jurisdiction with regard to the RICO claims is determined according to federal law. *See American Trading Partners, L.P. v. A-1 Int'l Importing Enterprises, Ltd.,* 755 F.Supp. 1292, 1302 (E.D.Pa.1990). Under sections 1965(a) and 1965(d)[FN6] of the RICO statute, a federal court has *in personam* jurisdiction over defendants "coextensive with the boundaries of the United States." *See id.* (quoting *Soltex Polymer Corp. v. Fortex Ind. Corp.,* 590 F.Supp. 1453, 1458 (E.D.N.Y.1984) (quoting *FTC v. Jim Walter Corp.,* 651 F.2d 251, 256 (5th Cir.1981))).

**\*4** Section 1965(d) "provides for 'nationwide service of process.' " *American Trading, supra.* Therefore, this court has *in personam* jurisdiction over Markland provided that Markland has "minimum contacts with

the United States." *Id.* Since Markland admits in its Motion and the Affidavit of its President that it is a citizen and resident of New Jersey, Markland has the requisite minimum contacts with the United States. *See also Max Daetwyler,* 762 F.2d at 293 (where a federal statute provides for nationwide service of process, "the proper inquiry in determining personal jurisdiction ... is one directed to the totality of a defendant's contacts throughout the United States"). Because the court has jurisdiction over Markland with regard to the federal RICO claims, the court has jurisdiction over Markland with respect to the common law claims arising from a common nucleus of operative facts. *See* 28 U.S.C. § 1367(a). *See also* 12 U.S.C. § 1452(f).

Venue lies in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b).[FN7] The Complaint, at ¶¶ 1 18 and 200 205, adequately alleges the existence of a conspiracy, the plan and purpose of the conspiracy, the roles of the defendants in the conspiracy, the performance of substantial acts in Pennsylvania in furtherance of the conspiracy by Markland's alleged co-conspirators, and Markland's knowledge of those acts, so that venue is proper in this District. *See American Trading,* 755 F.Supp. at 1304 (" 'where [a RICO] action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of ... [federal] ... statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants' ") (quoting *S.I.P.C. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir.1985), *rev'd on other grounds sub nom., Holmes v. S.I.P.C.,* 112 S.Ct. 1311 (1992)).[FN8]

C. RULE 19

Defendant Edward Cavallaro has moved for dismissal "for failure to conform with Federal Rule of Civil Procedure 19, failure to join an indispensable party." Cavallaro Motion ¶ 10. It is unclear whether Cavallaro is asserting that the *MortgageLinq I* defendants are indispensable to this action, or that the present defendants were indispensable to the earlier action, or both.[FN9] Regardless, dismissal is not appropriate under Rule 19.

Under Federal R. Civ. P. 12(b)(7), failure to join a party under Rule 19 may be the basis for a motion to dismiss. Rule 19 sets up a two part test. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 4
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

*Rittenhouse Assocs., 844 F.2d 1050, 1053 54 (3d Cir.1988).* First, under Rule 19(a), the court must determine whether the person in question should be joined. The standard for this "threshold" test is set out in the rule:

A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the persons's ability to protect that interest or (ii) leave any of the person's already parties subject to a substantial risk of incurring doubt, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

**\*5**Fed.R.Civ.P. 19(a). If the person must be joined under Rule 19(a), but cannot be made a party, then the test of Rule 19(b) must be applied. *See, e.g., Field v. Volkswagenwerk AG, 626 F.2d 293, 300 (3d Cir.1980).* "[T]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). The rule lists four factors to consider:
[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second; the extent to which, by the protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.* In deciding a Rule 19 motion, the court considers as true all well pled allegations. *See Clements v. Holiday Inns, Inc., 105 F.R.D. 467 (E.D.Pa.1984).*

*Temple v. Synthes Corp., Ltd., 498 U.S. 5, 111 S.Ct. 315 (1990)* (per curiam) is controlling. *Contra,* Cavallaro Memorandum, at 6. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.... [A] tortfeasor with the usual 'joint and several' liability is merely a permissive party to an action against another with like liability." *Temple, 498 U.S. at ----, 111 S.Ct. at 316* (citations omitted).

Cavallaro urges that the present circumstances are distinguishable from those in *Temple,* because here "plaintiffs filed the *identical* suit as was filed in the first federal action," while the two actions under consideration in *Temple* were "entirely different" from one another. Cavallaro Memorandum at 6 7. The suits are not identical and the distinction urged is not significant.

Cavallaro contends that "Cavallaro was a necessary party to the first federal action and ... the defendants of the first federal action are necessary parties to the instant action." Cavallaro Memorandum at 8.[FN10] The burden is on the movant to show that a person not joined in an action is needed for just adjudication. *See F.D.I.C. v. Beall, 677 F. Supp 279, 283 (M.D. Pa.1987).* Here, movant has not met this burden.

Neither the possibility of inconsistent results nor of multiple litigation makes a party "necessary" under Rule 19. The rule addresses "inconsistent obligations," not inconsistent results. *See Field v. Volkswagenwerk AG,* 626 at 301. Similarly, the Rule is concerned with "multiple obligations," not multiple litigation. *See Sindia Expedition, Inc. v. Wrecked and Abandoned Vessel, 895 F.2d 116, 122 23 (3d Cir.1990).* Rule 19(a)(1) addresses whether complete relief can be accorded between those already party to an action, not between a party and an absent party whose joinder is sought. *See Central Delaware Branch NAACP v. City of Dover, 110 F.R.D. 239, 241 (D. Del.1985).*

**\*6**Marra v. Burgdorf Realtors, Inc., 726 F.Supp. 1000 (E.D.Pa.1989), cited by Cavallaro at oral argument, is inapposite. Unlike in *Marra,* the fraud alleged in the present case relates to the value of property, not its ownership. Title to the 24 properties involved in the alleged fraud of Cavallaro and the other defendants is not in question. There is no suggestion in the pleadings or motions that any of the present defendants ever had, or were entitled to, an ownership interest in the subject properties. Title was determined in *MortgageLinq I,* but Cavallaro has not offered any support for his argument that he was prejudiced thereby.

Cavallaro has not shown that the "threshold" requirements of Fed.R.Civ.P. 19(a) are met. Therefore, it is unnecessary to conduct the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 5
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

"indispensable" party analysis of Rule 19(b). *See Temple,* 498 U.S. at, 111 S.Ct. at 316.

D. CLAIM PRECLUSION (*MortgageLinq I* )

Defendant Commonwealth, moving for dismissal, argues that this action is precluded because Commonwealth was not included in *MortgageLinq I.* Defendants Continental, Kehoe, and Lawyers Title have moved for summary judgment on the same ground.

Defendants rely upon the so-called "*Bruszewski* doctrine." *See Bruszewski v. United States,* 181 F.2d 419 (3d Cir. 1950), *cert. denied,* 340 U.S. 865 (1950); *Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir.1972). *See also Gambrell v. Hess,* 777 F.Supp. 375 (D.N.J.1991), *aff'd* 970 F.2d 898 (3d Cir.1992), *cert. denied,* 113 S.Ct. 272 (1992); *Goel v. Heller,* 667 F.Supp. 144 (D.N.J.1987). According to defendants, *Bruszewski* holds that:

A Plaintiff may not litigate in a subsequent action claims he could have, and should have, litigated in a prior action, even as to new defendants in the second action, where the new defendants have, or are alleged to have, a significant relationship with the defendants in the first case.

Memorandum of Lawyers Title, at 13.[FN11] Defendants argue that: (i) "the gravamen of plaintiffs' [two federal actions] is a conspiracy participated in by the defendants to [the two actions]," (ii) "plaintiffs settled with, or obtained default judgments against, virtually all of the defendants in [*MortgageLinq I* ]," and (iii) the defendants in the present action "have a substantial relationship to the defendants against whom [plaintiffs] have concluded their prior action," so the present action is barred under *Bruszewski.* Memorandum of Lawyers Title, at 15 17. However, defendants have construed *Bruszewski* too broadly; it does not bar this action.

*Bruszewski* applies only when the first action has been decided *against* the plaintiff. The *Bruszewski* court stated:

This second effort to prove negligence is comprehended by the generally accepted precept that a party who has had one fair and full opportunity to prove a claim and *has failed in that effort,* should not be permitted to go to trial on the merits of that claim a second time.

**\*7** *Bruszewski,* 181 F.2d at 421 (emphasis added). In *Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co.,* 411 F.2d 88 (3d Cir.1969), the court cited and reaffirmed the reach of *Bruszewski:* "The plaintiff was not permitted to litigate in the second suit, against a different defendant, the issues which he had litigated *and lost* in the first suit." *Provident,* 411 F.2d at 92 93 (emphasis added). Similarly, in *Gambocz,* the court stated:

It was our view in *Bruszewski*... that ... a party who as plaintiff had asserted a claim *and had lost* should not be heard again on the merits of that claim even in a second suit which he thereafter has instituted against a stranger to the original action.

*Gambocz,* 468 F.2d at 841 (omissions in *Gambocz;* emphasis added). *See also Gambrell v. Hess,* 777 F.Supp. 375 (D.N.J.1991) (previous action dismissed with prejudice against plaintiff), *aff'd,* 970 F.2d 898 (3d Cir.1992); *Goel v. Heller,* 667 F.Supp. 144 (D.N.J.1987) (first action dismissed with prejudice against plaintiff as discovery sanction); *Miller v. United States,* 438 F.Supp. 514 (E.D.Pa.1977) (summary judgment against plaintiff in first action); *County of Lancaster v. Philadelphia Electric Co.,* 386 F.Supp. 934 (E.D. Pa.1975) (judgment against plaintiffs in first action).[FN12]

A party asserting the affirmative defense of res judicata bears the burden of showing that it applies. *See Davis v. United States Steel Supply Co.,* 688 F.2d 166 (3d Cir.1982) (en banc), *cert. denied,* 460 U.S. 1014 (1983). Because plaintiffs were successful in *MortgageLinq I, Bruszewski* does not preclude their action against these defendants.[FN13]

E. CLAIM PRECLUSION (*N.J. MortgageLinq* )

Defendant Commonwealth has moved for dismissal, and defendants Continental, Kehoe, and Lawyers Title have moved for summary judgment, on the ground that the dismissal in *N.J. MortgageLinq* precludes the present action against them under New Jersey's entire controversy doctrine and the federal Full Faith and Credit Act, 28 U.S.C. § 1738. Because there has been no final judgment in *N.J.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

*MortgageLinq,* it does not preclude the present action.

Plaintiffs filed a complaint against the present defendants in the Superior Court of New Jersey on February 18, 1992. *MortgageLinq Corp., et al. v. Commonwealth Land Title Ins. Co., et al.,* New Jersey Superior Court (Law Div.), Camden County, Civil No. L-01666-92. *MortgageLinq I* was pending in this court.[FN14] The New Jersey complaint arose out of the same transactions or occurrences as *MortgageLinq I* and the present action; all three complaints are substantially similar but plaintiffs in *N.J. MortgageLinq* assert a claim under New Jersey RICO, N.J. Stat. Ann. § 2C:41-1*et seq.,* rather than under federal RICO.

On May 8, 1992, Lawyers Title and Continental moved for summary judgment in *N.J. MortgageLinq;* Kehoe moved to dismiss. All three motions asserted that plaintiffs' failure to join the *N.J. MortgageLinq* defendants in *MortgageLinq I* barred the New Jersey action under that state's entire controversy doctrine. On June 11, 1992, Judge Barry M. Weinberg issued an Opinion and three orders granting summary judgment to Lawyers Title and Continental and dismissing Kehoe. *MortgageLing Corp., et al. v. Commonwealth Land Title Ins. Co., et al.,* 620 A.2d 456, 1992 WL 451052 (N.J.Super. Ct. Law. Div.) ("*N.J. MortgageLinq* Opinion").

**\*8** These Orders were modified by Order of August 24, 1993: Judge Weinberg stated that the summary judgment and dismissal orders were "with prejudice" and "on the basis that the entire controversy doctrine bars litigation of plaintiffs' claims against said defendants in the State of New Jersey."

The court therefore holds that the entire controversy doctrine operates to bar suits against parties which could and should have been joined in a previous suit despite the fact that the earlier suit was brought in another state or in a federal court. This holding is limited to cases such as this where the plaintiffs purposefully bifurcated the litigation and there are no questions of *in personam* jurisdiction respecting the omitted parties.

*N.J MortgageLing* Opinion, 1992 WL 451052 at *6. *N.J. MortgageLinq* is still pending against defendants Commonwealth, Cavallaro, Markland, and

Rankin.[FN15]

At the hearing on plaintiffs' motion to modify the June 11th Orders, Judge Weinberg stated:

It was my intent to dismiss the complaint pursuant to and solely on the basis of the entire controversy doctrine and it was my intent that it be with prejudice regarding the institution or reinstitution or refiling of that complaint within the jurisdiction of the State of New Jersey. It was not my intention to set forth in my order any language that would provide extra-territorial effect. That effect, if it is to be given, would be given by a judge in another jurisdiction.

....

I don't believe that I can or should attempt to bind a judge in the Commonwealth of Pennsylvania that does not recognize the entire controversy doctrine.

It may well be that plaintiff will go back to Pennsylvania and attempt to convince Judge Shapiro that Judge Shapiro should reconsider. I don't know what the plaintiff's going to do. But I don't-it is not my intention to have my determination that I made in this case binding upon any other judge outside the State of New Jersey.

Exh. B. to Plaintiffs' Response (*N.J. MortgageLinq,* Transcript, July 9, 1992, at 6, 8).

New Jersey's entire controversy doctrine "requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." *O'Shea v. Amoco Oil Co.,* 886 F.2d 584, 590 (3d Cir.1989) (quoting *Melikian v. Corradetti,* 791 F.2d 274, 279 (3d Cir.1986)), *cert. denied,*112 S.Ct. 956 (1992). The doctrine is "a particularly strict application of the rule against splitting a cause of action." *Bennun v. Rutgers State University,* 941 F.2d 154, 163 (3d Cir.1991). "The point of the doctrine is that 'a component of the controversy may not be unfairly withheld, and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game.' " *Electro-Miniatures Corp. v. Wendon Co., Inc.,* 889 F.2d 41, 45 (3d Cir.1989) (quoting *William Blanchard Co. v. Beach Concrete*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 7
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

*Co., Inc.,* 375 A.2d 675, 684 (N.J.Super. App. Div.1977), *cert. denied,* 384 A.2d 507 (N.J.1977)).[FN16]

**\*9** The New Jersey entire controversy doctrine may bar an action against one who was not, but could have been, party to the earlier action. *See Cogdell v. Hospital Center at Orange,* 560 A.2d 1169 (N.J.1989). Judge Weinberg found that the *N.J. MortgageLinq* action was sufficiently related to the *MortgageLinq I* action to fall within the entire controversy doctrine and bar the subsequent action in a New Jersey state court against Lawyers Title, Continental, and Kehoe.[FN17]

Under the Full Faith and Credit Act, this court must give the judicial proceedings of a State "the same full faith and credit ... as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 (1982) (under Full Faith and Credit Act, federal courts must give same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged); *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373 (1985); *Bennun,* 941 F.2d at 163 ("Under settled federal case law we must give the [earlier] New Jersey state-court judgment the same preclusive effect that New Jersey would give that judgment."). If the present action is barred in New Jersey by a New Jersey judgment, this court must give that New Jersey judgment the same preclusive effect. *See, e.g., Bernardsville Quarry v. Borough of Bernardsville,* 929 F.2d 927, 930 (3d Cir.1991) ("The only question ... is whether another New Jersey court would have allowed [plaintiff] to raise its federal claim in a subsequent state action."), *cert. denied,* 112 S.Ct. 182 (1991).

An action is barred in New Jersey by principles of claim preclusion where: (a) there has been a final adjudication on the merits; (b) the parties are the same; and (c) the claims in the later action grow out of the same transaction or occurrence as the claim in the earlier action. *See Watkins v. Resorts Int'l Hotel & Casino,* 591 A.2d 592, 599 (N.J.1991); *Velasquez v. Franz,* 589 A.2d 143, 147 (N.J.1991). "[R]es judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding."

*Velasquez,* 589 A.2d at 147.

The claims in the present action are the same as those in *N.J. MortgageLinq,* or grow out of the same transactions and occurrences. Plaintiffs did not include a federal RICO claim in *N.J. MortgageLinq,* but could have, *see Tafflin v. Levitt,* 493 U.S. 455 (1990) (concurrent jurisdiction over federal RICO claims); a federal RICO claim would be barred both in New Jersey and federal courts by a final judgment on the merits in *N.J. MortgageLinq. See, e.g., McCarter v. Mitcham,* 883 F.2d 196, 200 (3d Cir.1989) (barring on *res judicata* grounds federal RICO claims which could have been raised in prior Pennsylvania action); *Printing Mart-Morristown, Inc. v. Rosenthal,* 650 F.Supp. 1444 (D.N.J.1987) (applying Full Faith and Credit Act to bar federal RICO claim because it could have been included in prior New Jersey state court action), *aff'd,* 856 F.2d 184 (3d Cir.1988). A final adjudication on the merits in *N.J. MortgageLinq* would bar the present action in New Jersey, and under Full Faith and Credit, would bar it here as well.

**\*10** Judge Weinberg's orders of dismissal with prejudice were "on the merits." *See* N.J. Court R. 4:37-2(d).[FN18] *See also Velasquez,* 589 A.2d at 148 ("A judgment of involuntary dismissal or dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.' ") (quoting *Gambocz v. Yelencisics,* 468 F.2d 837, 840 (3d Cir.1972)). However, they were not "final" orders, because the action is still pending against four other defendants in *N.J. MortgageLinq* (Commonwealth, Cavallaro, Markland, and Rankin). *See* N.J. R.App. P. 2:2-3; *Jones v. Jones* 576 A.2d 316, 319 (N.J.Super. App. Div.1990) ("To be appealable without leave granted, the judgment must be final as to all parties and all issues."). Since the orders are not yet appealable of right, the time for appellate review has not expired. *See* N.J. R.App. P. 2:4-1.

If the judgments in *N.J. MortgageLinq* in favor of Continental, Lawyers Title, and Kehoe were "final," plaintiffs would be precluded under New Jersey law from litigating in New Jersey those claims decided against them in *N.J. MortgageLinq,* and the action against these defendants would also be barred here. Should the judgments in favor of Lawyers Title, Continental, and Kehoe become final, this court will

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 8
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

be bound to respect the New Jersey judgments and dismiss this action against these defendants. This court will also be required to apply New Jersey preclusion law to a final judgment on the merits in *N.J. MortgageLinq* with respect to defendants Commonwealth, Cavallaro, Markland, and Rankin. At present, *N.J. MortgageLinq* does not preclude this action, because no final judgment has been entered against any defendant.

Defendants argue that even if this action is not barred by *N.J. MortgageLinq* under the Full Faith and Credit Act, it is barred by application of the New Jersey entire controversy doctrine to the judgment in *MortgageLinq I,* the first federal action, because plaintiffs' present and *MortgageLinq I* claims arose under New Jersey law, so New Jersey claim preclusion applies. This argument apparently rests on defendants' assumption that the substantive claims in these federal action are matters of New Jersey law. *See Merritt Logan v. Fleming Foods of Pennsylvania, 138 B.R. 15, 21 (Bankr.E.D.Pa.1992)* ("When this court rendered its first judgment, it was entering judgment on a New Jersey cause of action."). However, since both federal actions assert federal RICO claims, defendants' assumption that the substantive claims in either federal action are entirely matters of New Jersey law is erroneous.

When *MortgageLinq I* was filed on March 13, 1991, the only plaintiff was MortgageLinq Corporation. The complaint asserted a federal RICO claim and common law claims; jurisdiction was claimed under 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental). Freddie Mac moved to intervene as a party plaintiff on January 31, 1992 (Docket Entry No. 121; the motion was granted by Order of February 14, 1992 (Docket Entry No. 124). Because all of the defendants in *MortgageLinq I* either admitted liability or were held in default, no trial was held and no determination was made whether the source of applicable substantive law for the common law claims was federal, New Jersey, or Pennsylvania. *See MortgageLinq I,* Findings of Fact and Conclusions of Law, July 16, 1992 (Docket Entry No. 219), at 29.

**\*11** Both MortgageLinq and Freddie Mac filed the present action. Jurisdiction is claimed under 28 U.S.C. § 1331 (federal question) and § 1345 (United States as Plaintiff). Jurisdiction is also claimed under 12 U.S.C. § 1452(f):

... (1)[T]he [Federal Home Loan Mortgage] Corporation shall be deemed to be an agency included in sections 1345 and 1442 of ... Title 28; (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such action....

Plaintiffs argue that since Freddie Mac is a corporate instrumentality of the United States, *see supra* note 1, all claims must be decided under federal law. *See United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979)* ( "Since the agencies derive their authority to effectuate loan transactions from specific acts of Congress passed in the exercise of a 'constitutional function or power,' their rights, as well, should derive from a federal source.") (citation omitted); *Clearfield Trust Company v. United States, 318 U.S. 363 (1943).*[FN19]

Defendants' argument that plaintiffs are barred by *MortgageLinq I* may have merit with respect to the common law claims. No authority cited by plaintiffs or defendants is entirely on point.[FN20] However, under the *Merritt* approach urged by plaintiffs, even if the common law claims in both federal actions arose under New Jersey law, preclusion of plaintiffs' federal RICO claims must be determined under federal law; under that analysis the RICO claims would not be precluded. Since discovery must proceed at least for the RICO claims, dismissal of the common law claims would not substantially simplify the case, and no defendant would be dismissed thereby.[FN21] Therefore, the court will defer consideration of this element of defendants' argument. At the conclusion of discovery, and in conjunction with motions for summary judgment, defendants may reassert their argument that plaintiffs' common law claims are barred by *MortgageLinq I.*[FN22]

Defendant Commonwealth urges the court to abstain or stay this action while the New Jersey case is pending. The court cannot abstain from exercising its jurisdiction because of the pendency of *N.J. MortgageLinq,* absent "exceptional circumstances" not presented here. " 'The pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.' " *Schall v. Joyce, 885 F.2d 101, 112 (3d Cir.1989)*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 9
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

(quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976)). Should the parties agree to stay this action, and if the court is satisfied that they will take steps expeditiously to conclude the state proceeding, the court would consider a joint request to stay this action for a reasonable period of time. *See Balfour v. Gutstein,* 547 F.Supp. 147 (E.D.Pa.1982).

**\*12** An appropriate Order follows.

PRETRIAL ORDER NO. 2

AND NOW, this ____ day of March, 1993, for the reasons stated in the foregoing Memorandum, it is ORDERED that:

1. The Motion of defendant Markland Title Services, Inc. to Dismiss is DENIED.

2. The Motion of defendant Commonwealth Land Title Insurance Company to Dismiss is DENIED.

3. The Motion of defendants Continental Title Insurance Company and Elizabeth Kehoe for Summary Judgment is DENIED.

4. The Motion of defendant Lawyers Title Insurance Corporation for Summary Judgment is DENIED.

5. The Motion of defendant Edward Cavallaro to Dismiss is DENIED.

6. The denials of said Motions are WITHOUT PREJUDICE to motions for summary judgment upon completion of discovery, and WITHOUT PREJUDICE to motions for summary judgment based upon the final adjudication of *MortgageLinq Corp., et al. v. Commonwealth Land Title Ins. Co., et al.,* New Jersey Superior Court (Law Div.), Camden County, Civil No. L-01666-92 ("*N.J. MortgageLinq*").

7. All Answers to the Complaint shall be FILED on or before *April 30, 1993.*

8. The court's Pretrial Order No. 1 of December 3, 1992, RICO Case Standing Order of December 2, 1992, and Special Management Track Case Management Policy, remain in effect.

9. The Preliminary Report, List of Affiliated Companies, RICO Case Statement, and Proposed Agenda Items shall be SUBMITTED in accordance with the above-referenced Orders, on or before *May 7, 1993.*

10. A pretrial conference will be held on *May 13, 1993,* at *9 a.m.* in Courtroom 10-A.

> FN1. Freddie Mac, a corporate instrumentality of the United States, was created to establish an active national secondary market for residential mortgages. *See* 12 U.S.C. § 1451, *et seq.* Freddie Mac purchases mortgages from lending institutions, such as MortgageLinq, and resells them as guaranteed mortgage backed securities.

> FN2. By Order dated January 21, 1993, this court dismissed the present complaint as to defendant Roberta Rankin for failure to make service within the time prescribed in Fed.R.Civ.P. 4.

> FN3. It is law in this Circuit that "twelve months is not a substantial period of time," with respect to the closed-ended test, *Hughes,* 945 F.2d at 611, but the court cannot now conclude, as moving defendants argue, that plaintiffs have alleged a scheme which necessarily lasted for only eight and one-half months. *See* Memorandum of Lawyers Title, at 44.

> FN4.*See also infra* at 10.

> FN5. Neither Markland's Motion nor its President's Affidavit contradict the allegations in the Complaint, at ¶¶ 7, 8, thatMarkland is an "affiliate or agent of Lawyers [Title]," and that Lawyers Title "has offices in Pennsylvania." On the contrary, the Affidavit, at ¶ 9, states that Markland "was an agent for Lawyers Title Insurance Corporation."

> FN6. Section 1965(a) provides that:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 10
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

Section 1965(d) provides that:

All other process in any action or proceedings under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

FN7. The applicable venue provision states:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Since this court has jurisdiction, it would not dismiss the case even if venue were more appropriate in another judicial district; the proper remedy is transfer to that district. *See Societe Nouvelle Generale de Promotion v.Kool Stop Int'l, Inc.,* 633 F.Supp. 153, 155 (E.D.Pa.1985); 28 U.S.C. § 1404(a).

FN8. Additionally, because Markland is subject to personal jurisdiction in this District under the RICO statute, *see supra,* Markland is deemed to reside in this District for purposes of venue. *See* 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal

jurisdiction at the time the action is commenced.").

FN9. In *MortgageLinq I,* defendants Mario S. D'Adamo and O. Robert Silverstein moved under Rule 19 and 14 for joinder of Cavallaro and the other present defendants. (*MortgageLinq I,* Docket Entry No. 145). The court denied the motion. (*MortgageLinq I,* Order of April 13, 1992, Docket Entry No. 167). Although the court has ruled that Cavallaro was not indispensable to that action under Rule 19, Cavallaro was not then a party and is not bound by that decision. *See Martin v. Wilkes,* 490 U.S. 755 (1989).

FN10. Cavallaro offers little more than conclusory statements in support of this contention: "Clearly, if defendant Cavallaro was responsible for the same injuries as those allegedly caused by the first federal action, he could and should have been part of the initial litigation." Cavallaro Memorandum at 6.

FN11.*Bruszewski* is described in similar terms in the Memoranda of Law submitted by the other defendants who have raised this defense.

FN12. Lawyers Title cites three cases from jurisdictions outside the Third Circuit in support of its averment that "courts inother circuits have cited the Third Circuit [*Bruszewski* ] doctrine in dismissing successive lawsuits against new defendants on res judicata grounds." Lawyers Title Memorandum, at 19 n.5. *See Betances v. Quires,* 603 F.Supp. 201 (D.P.R.1985); *Cahill v. Author Anderson & Co.,* 659 F.Supp. 1115 (S.D.N.Y.1986), *aff'd,*822 F.2d 14 (2d Cir.1987); *Ruskay v. Jensen,* 342 F.Supp. 264 (S.D.N.Y.1972), *aff'd,*552 F.2d 392 (2d Cir.1977), *cert. denied,*434 U.S. 911 (1977). In these cases, the prior actions were dismissed with prejudice to the plaintiff. *See also* Jean F. Rydstrom, Annotation, *Modern Status of Mutuality of Estoppel Requirement for Application of Doctrine of Collateral Estoppel in Federal*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 11
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

*Civil Cases to Stranger to Prior Judgment* § 5, 58 L.Ed.2d 938 (1980 & Supp.1992) & cases cited therein.

FN13. We do not now consider plaintiffs' argument that, "to the extent the title company defendants are in privity or sufficiently related to the defendants in [*MortgageLinq I* ], they may be precluded in this litigation by the doctrine of nonmutual offensive collateral estoppel from relitigating certain issues decided in plaintiffs' favor in [*MortgageLinq I* ]." Plaintiffs' Memorandum, at 24 (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979)).

FN14. Shortly thereafter, this court denied the motion of certain broker defendants for an order compelling the joinder of the *N.J. MortgageLinq* defendants in *MortgageLinq I* as additional party defendants under Rule 19 or in the alternative for leave to implead them as third party defendants under Rule 14. (*MortgageLinq I,* Order of April 13, 1992, Docket Entry No. 167). *See* Local R. Civ. P. 22. Plaintiffs in *MortgageLinq I* never moved to file an amended complaint naming the *N.J. MortgageLinq* defendants.

FN15. Plaintiffs argue in their Memorandum, at 10 n.2:

Judge Weinberg ... inexplicably, refused to allow any of the other defendants to join in the motions and limited the effect of his orders to Lawyers, Continental and Kehoe, although the basis of those orders, as explained in his written opinion, would appear to apply equally to each of the Title Company Defendants.

FN16. New Jersey Court R. 4:30A requires that:

Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine....

Judge Weinberg's *MortgageLinq* Opinion, at *6 n.4, specified that the dismissals were "based in part upon ... failure to obey Rule 4:30A, as well as upon the more substantive grounds discussed in the opinion."

FN17. Plaintiffs argue here, as they did before Judge Weinberg, that New Jersey's entire controversy doctrine does not bar actions in New Jersey against a defendant who was not but could have been party to an action in a state other than New Jersey. There is support for this view. *See Kimmins Abatement Corp. v. Conestoga-Rovers & Associates, Inc.,* 601 A.2d 256, 258 (N.J.Super. Law Div.1991) ("neither our Supreme Court nor the Appellate Division has ever extended the doctrine to bar a secondlawsuit against a defendant who was not a party to a first lawsuit in another State"). *See also Electro-Miniatures Corp.,* 889 F.2d at 45 n.6. ("[by] such a holding ... New Jersey would be imposing on litigants and courts in other states its policy choice to encourage parties to litigate all claims, defenses, issues, and remedies related to a particular transaction").

FN18. The rule states in pertinent part:

(d) Dismissal with Prejudice; Exceptions. Unless the order of dismissal otherwise specifies, ... any dismissal not specifically provided for by R. 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits.

FN19. These cases also make clear that in giving content to federal law, the court may look to state law. "Although a transaction is governed by federal law, the rule of decision in some circumstances is derived from incorporation of relevant state law." *United States v. Spears,* 859 F.2d 284, 289 (3d Cir.1988) (citing *Kimbell Foods, supra* ).

FN20. The *Merritt* court analyzed the preclusive effect of the earlier federal action under Pennsylvania, New Jersey, and federal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 12
Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266
**(Cite as: Not Reported in F.Supp., 1993 WL 95494)**

law, and reached the same result in each instance. Therefore, that court's expression of its belief that New Jersey claim preclusion law applied was not critical to its decision that the later action was barred. Moreover, in *Merritt,* the parties to both federal actions were the same. Therefore Judge Van Artsdalen did not have to consider the application of New Jersey's entire controversy to a second lawsuit against a defendant who was not a party to a first non-New Jersey lawsuit. The New Jersey Supreme Court has not ruled on this question, nor has the Third Circuit Court of Appeals. However, we agree with our Court of Appeals that New Jersey is not likely to so extend its entire controversy doctrine. *See supra* note 17. *Cf. Largoza v. General Electric Co.,* 538 F.Supp. 1164, 1166 (E.D.Pa.1982) (District Court bound by Court of Appeals prediction of state law).

FN21. A Discovery Order will be issued following the pretrial conference scheduled in the Order accompanying this Memorandum.

FN22. Resolution of this point can have no effect upon the preclusive effect this court will give to a final judgment on the merits in *N.J. MortgageLinq.* Defendants' argument will be moot in the event they are successful in that case, because this court will be bound to respect the New Jersey judgment and dismiss this action. In the event the issue of the preclusive effect of *MortgageLinq I* must be revisited, the court expects plaintiffs and defendants to fully brief it with particular attention to the unique procedural circumstances in this case, i.e., that no determination was made in the first federal action as to the source of substantive law for the common law claims; that although a corporate instrumentality of the United States is party to both actions, it did not join in the second action until 9 months after it was filed; and that there is a non-federal plaintiff in each case.

E.D.Pa.,1993.
Federal Home Loan Mortg. Corp. v. Commonwealth Land Title Ins. Co.

Not Reported in F.Supp., 1993 WL 95494 (E.D.Pa.), RICO Bus.Disp.Guide 8266

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the attached pleading was served this 12th day of

May, 2008, on the following individuals by CM/ECF electronic filing:


David J. Baldwin, Esquire
**Potter Anderson & Corroon, LLP**

John Anthony Macconi, Jr., Esquire
Daniel P. Bennett, Esquire
**Mintzer Sarowitz Zeris Ledva & Meyers, LLP**


　　　　　　　　　　　　　　　　  /s/ Neal J. Levitsky　　　　　　　
　　　　　　　　　　　　　　　Neal J. Levitsky, Esquire (No. 2092)